**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-24202-Civ-SCOLA/TORRES

MAGNOLIA LANE CONDOMINIUM
ASSOCIATION, INC.

      Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

      This matter is before the Court on the parties' cross motions for partial summary judgment filed by Magnolia Lane Condominium Association, Inc., ("Magnolia" or "Plaintiff") [D.E. 59] and Rockhill Insurance Company ("Rockhill" or "Defendant") [D.E. 60]. The parties filed timely responses [D.E. 64, 65] and replies [D.E. 68, 70] to each motion. Therefore, the motions are now ripe for disposition.[1] After careful consideration of the motions, responses, replies, relevant authority, and for the reasons discussed below, Plaintiff's motion for partial summary judgment [D.E. 59] should be **DENIED**, and Defendant's motion for partial summary judgment [D.E. 60] should be **GRANTED**.

---

[1] On February 22, 2022, the Honorable Robert N. Scola referred the subject motions for partial summary judgment to the undersigned for a report and recommendation. [D.E. 71].

# I.  BACKGROUND

This case arises from an insurance coverage dispute between Magnolia and Rockhill in connection with physical damages sustained by condominium buildings owned by Magnolia, and insured by Rockhill, during Hurricane Irma on September 10, 2017.  [D.E. 58, ¶¶ 1-3].  The Hurricane physically damaged portions of the roofs and windows of several of Plaintiff's apartment buildings, a club house, and a pool cabana building.  [D.E. 1-2, p. 26].  Following the incident, Plaintiff promptly notified Defendant about the property damage and an investigation by Rockhill ensued.

After investigating the claim, Rockhill paid Plaintiff a total of $73,342.62 for the damages.  [D.E. 58, ¶ 4].  Plaintff disputed Rockhill's assessment and on February 8, 2019, filed a Proof of Loss Statement with Rockhill notifying the insurer that it sought $2,238,972.47 in damages—a figure based on the assessment of a private adjuster engaged by Magnolia.  [D.E. 1-2, ¶¶ 3-4].  However, Rockhill rejected Plaintiff's proposed damages calculation, prompting Plaintiff to commence this lawsuit for breach of contract.[2]

In an effort to resolve the dispute, the parties attended mediation on July 2020, and agreed to stay this case and submit Plaintiff's claim to an appraisal panel as provided for in the Rockhill policy.  The panel issued its appraisal award on June 2021.  However, Plaintiff objected to the appraisers' calculation and moved to

---

[2] Plaintiff originally filed suit in Florida state court on September 12, 2019. Defendant successfully removed that action to the Southern Distinct of Florida on October 11, 2019, on the basis of diversity jurisdiction.  [D.E. 7].

reopen this case on July 7, 2021, claiming that the award must be remanded to the panel for a corrected assessment.  [D.E. 58, ¶ 7].

According to Plaintiff, the appraisal award was defectively calculated because the appraisers neglected to account for "matching" costs in their calculations.[3] Specifically, Plaintiff alleges that the appraisal award does not account for the costs associated with the replacement of undamaged roof panels and windows for the purposes of matching.  [D.E. 59, p. 7].  Defendant, on the other hand, contends that the policy does not provide coverage for matching expenses, and that the policy requires it to pay for the costs associated with replacing or repairing only roof panels and windows that were actually damaged by the storm.  [D.E. 60, p. 6].

Accordingly, the parties have filed cross-motions for summary judgment seeking judgment form this Court on one discrete matter: whether the terms of the Rockhill policy entitle Magnolia to coverage for repair or replacement costs of undamaged roof panels and windows to ensure that they match the appearance of replacements to physically damaged items.  In other words, whether the policy covers matching costs.  As we explain further below, this policy does not.

---

[3] Plaintiff explains that by "matching" it "refers to instances in which the repairs authorized by the Appraisal Panel will not match the existing, undamaged materials."  [D.E. 58, p. 2 n.1].

## II.   APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).  In making this determination, the Court must decide which issues are material.  A material fact is one that might affect the outcome of the case.  *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  "Summary judgment will not lie if

the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III.   ANALYSIS

Plaintiff asks this Court to find that, as a matter of law, it is entitled to matching costs under the Rockhill policy because the terms of the policy are ambiguous and, as such, should be read in favor of the insured.  Plaintiff also argues that the policy's provision excluding coverage of entire series of pieces or panels is invalid because it renders the contract illusory, and that public policy commands a reading of the contract that includes coverage for matching costs.  Defendant disagrees, arguing that the plain language of the policy specifically limits Rockhill's payment obligations to the cost to repair or replace damaged property only.

As a threshold matter, the parties concede that because the policy at issue is a commercial property policy and not a homeowner's insurance policy the matching coverage requirements of Fla. Stat. § 626.9744(2) do not apply to this case.  *See Strasser v. Nationwide Mut. Ins. Co.*, No. 09-60314-CIV, 2010 WL 667945, at *1 (S.D. Fla. Feb. 22, 2010) ([T]he policy at issue in this case is not a homeowner's policy; it is a commercial policy. Thus, [Fla. Stat. § 626.9744] is inapplicable.").  Accordingly, the Court's focus must be on the plain language of the insurance policy alone.

### A.   *General Principles of Insurance Contracts*

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452, at *4 (M.D.

Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).  The interpretation of an insurance contract – including the question of whether an insurance provision is ambiguous – is a question of law.  *See id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

In addition, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).  The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties.").

"If a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Hagen v. Aetna Cas. & Sur. Co.,* 675 So. 2d 963, 965 (Fla. 5th DCA 1996).  An ambiguous policy must, for example, have a genuine inconsistency, uncertainty, or ambiguity in meaning after the court has applied the ordinary rules of construction.  *See Deni*

6

*Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So. 2d 1135 (Fla. 1998). "Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous." *Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co.*, 2009 WL 700246, at *4 (S.D. Fla. Mar. 17, 2009) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 166 (Fla. 2003)).  Ultimately "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence[,]" *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001) (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)), given that "[c]ourts are not free to rewrite an insurance policy or to add terms or meaning to it." *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*, 210 F.3d 1348, 1351 (11th Cir. 2000).

**B.** ***The Plain Language of the Policy Does Not Provide for Matching Costs***

Courts in this District have defined matching expenses as the costs associated with replacing or modifying undamaged property "to assure aesthetic uniformity between damaged building components that must be replaced and the undamaged building components." *Great Am. Ins. Co. of New York v. Towers of Quayside No. 4 Condo. Ass'n*, No. 15-CV-20056, 2015 WL 6773870, at *3 (S.D. Fla. Nov. 5, 2015); *see also Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23685-CV, 2012 WL 13012457, at *4 (S.D. Fla. May 8, 2012) (defining the term as "costs related to the 'matching' of undamaged materials to newly-replaced materials.").  We agree with Defendant that a plain reading of this particular policy belies any contention that its terms afford coverage for the replacement of any undamaged property.

The relevant provisions of the disputed Rockhill policy provide the following:

**CONDOMINIUM ASSOCIATION COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

. . . .

**A. Coverage**
We will pay for direct physical loss or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

. . . .

**COMMERCIAL PROPERTY CONDITIONS**
This Coverage Part is subject to the following conditions, and applicable Loss Condition and Additional Conditions in Commercial Property Coverage Forms.

. . . .

**R. LOSS TO A PAIR, SET OR PANEL**

In case of loss to a pair, set or panels, we may elect to:
    1. Repair or replace any part to restore the pair, set or panels to its value before the loss;
    2. Pay the difference between actual cash value of the property before and after the loss;
    3. Pay in any loss involving part of a series of pieces or panels:
        a) The reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible; or
        b) The reasonable cost of providing an acceptable decorative effect or utilization as circumstances may warrant.

However, we do not guarantee the availability of replacements, and we will not be liable, in the event of damage to or loss of a part, for the value, repair or replacement of the entire series of pieces or panels.

[D.E. 10-1, pp. 18, 45, 47].

Plaintiff's argument that it is entitled to costs for the replacement of undamaged roof panels and windows for the purposes of aesthetic matching relies

exclusively on its reading of subsection R. above.  The problem is that, to reach its conclusion, Plaintff relies on cherry-picking construction of the policy terms that deprives them of context and distorts their real meaning.  For instance, Plaintiff claims that the "policy specifically addresses matching under the 'Pair, Set or Panels' provision."  [D.E. 59, p. 4].  Yet, a plain reading of the entire provision belies Plaintff contention.  While it is true that subsection 3(a) contains the word "match" in it, the words surrounding the term make it clear that this provision is not meant to afford coverage for undamaged property—as Plaintiff's definition of matching entails.  To the contrary, the provision plainly states that Defendant's liability is specifically limited to damaged property, as Rockhill may choose to pay "[t]he reasonable cost of repairing or replacing **the damaged part** to **match** the remainder as closely as possible."  [D.E. 10-1, p. 47].  *See also id.* at 18 ("[Rockhill] will pay for direct physical loss of or damage to Covered Property").  Instead of reading this term in concert with its surrounding language, Plaintiff's reading improperly ignores the broader context surrounding the word "match" and imputes to it a meaning that the plain text of the clause simply does not support.[4]  *See Farm Mut. Auto Ins. Co. v. Mashburn*, 15 So. 3d 701, 704 (Fla. 1st DCA 2009) (explaining a "single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its

---

[4] This provision reads very different from what courts have deemed actual matching provisions.  *See e.g.*, Fla. Stat. § 626.9744(2) ("When a loss requires replacement of items and the replaced items do not match in quality, color, or size, the insurer shall make reasonable repairs or replacement **of items in adjoining areas**.") (emphasis added); *Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 19-80959-CIV, 2021 WL 8536459, at *1 (S.D. Fla. Dec. 22, 2021) (discussing matching provision providing for "Coverage For Loss To The **Undamaged Portion** Of The Building") (emphasis added).

entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders.").[5]

Plaintiff's theory that the policy requires Defendant to pay for the replacement of undamaged items for the purposes of matching conflicts with the plain terms of the contract in two additional ways.  First, subsection R. expressly provides that the payment methods it articulates are a set of options, not requirements: "[i]n case of loss to a pair, set or panels, [Rockhill] *may elect to* . . . ." (emphasis added).  [D.E. 10-1, p. 47]; *see also* [D.E. 59, p.7] (conceding that the "'Loss to a Pair, Set or Panel' provision gives Defendant three options for the payment of loss."); *Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 67 (Fla. 4th DCA 2011) (observing that the term "may" indicates that an option choice is not mandatory).

Second, the provision that Plaintff relies on explicitly limits the scope of Defendant's liability under the policy by expressly *excluding* from coverage the type of costs that Plaintff seeks in this action: "*we will not be liable*, in the event of damage to or loss of a part, for the value, repair or replacement *of the entire series of pieces or panels*."  [D.E. 10-1, p. 47] (emphasis added).  So, not only does the policy plainly limits the scope of the term "match" to damaged property, but its terms also expressly disclaim any obligation on the part of Rockhill to bear the cost of wholesale replacements.  In light of the clear and explicit language in the policy

---

[5] In this respect the Court finds that Defendant's interpretation of the provision is the more sensible one: "[it] precludes Rockhill from replacing, for example, damaged tile roof shingles with new asphalt alongside the remaining (undamaged) tile shingle.  However, nothing in this policy provision requires Rockhill to replace the remaining <u>undamaged</u> property to 'match' the new replacement parts."  [D.E. 65, p. 6].

limiting coverage to direct physical loss and specifically excluding liability for entire series of pieces or panels, we cannot find that, as a matter of law, Plaintiff is entitled to recover for the replacement of undamaged roof panels or windows for the purposes of matching under this policy.  *See Great Am. Ins. Co. of New York*, 2015 WL 6773870 at *3 (J. King) (no matching coverage in policy that "only provides coverage for 'direct physical loss,' specifically excludes coverage for consequential loss, and makes no mention of 'matching' or 'aesthetic uniformity' at all."); *Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23685-CV, 2012 WL 13012457, at *4 (S.D. Fla. May 8, 2012) (denying coverage for "matching" costs under policy that limited recovery to "direct physical loss," and that included an optional "Loss Payment" provision, and was devoid of language "showing [ ] entitlement to matching of undamaged property to newly-repaired property.").

Plaintff asks this Court to ignore the last paragraph of subsection R., arguing that its exclusion provision renders the coverage provision illusory.  [D.E. 59, p. 7].  Not so.  As the Eleventh Circuit has noted, "[e]xclusions do not render coverage illusory even if they make the coverage depend on 'extraordinary circumstances' that are 'unlikely' to occur."  *Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1266 (11th Cir. 2021) (citation omitted).  Further, we do not find that the exclusion provision completely contradicts the coverage provision in this case.  Instead, the exclusion provision operates side-by-side with both the optionality aspects of the provision as well as its limitations to damaged property only.  Accordingly, Plaintiff's argument lack merit.  *See Goldberg v. Nat'l Union Fire Ins.*

*Co. of Pittsburgh, PA.*, 143 F. Supp. 3d 1283, 1301 (S.D. Fla. 2015), *aff'd sub nom Stettin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 861 F.3d 1335 (11th Cir. 2017) (holding that where exclusion provision does not completely contradict the insuring provision, the contract is not rendered illusory).[6]

It is noteworthy that Plaintff fails to cite a single case in this Circuit holding that policies analogous to the one at hand provide for the kind of matching costs Plaintff seeks. In fact, the one case Plaintiff purports to rely on, *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, came out the opposite way and its holding does more harm than good to Plaintiff's case. In *Ocean View* Judge Scola granted summary judgment to the insurer on the issue of matching, because the policy was limited to "direct physical loss" and made "no mention of 'matching' at all." *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447-CIV, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011). We do not read *Ocean Views* as granting the term "match" a talismanic meaning that entitles an insured to matching costs any time the term is used in a policy, regardless of the context surrounding the term and the accompanying textual limitation defining its scope. Rather, in *Ocean View* Judge Scola refused to depart form the policy's plain meaning by declining to rewrite its terms to include a matching directive that was not supported by the contract's plain language. Consistent with that holding, here, too, we refuse to engage in the

---

[6] We are also unpersuaded by Plaintiff's claim that the insurance policy is ambiguous because it fails to define the terms "pair, set or panel." [D.E. 59, p. 4]. *See Those Certain Underwriters at Lloyd's London v. Karma Korner*, LLC, 2011 WL 1150466, at *2 (M.D. Fla. 2011) (citation omitted) ("[t]he mere failure to provide a definition of a term involving coverage does not render the term ambiguous.").

rewriting of the parties' contractual agreement.  *See Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993 (Fla. 4th DCA 2014) ("Contracts are voluntary undertakings, and contracting parties are free to bargain for — and specify — the terms and conditions of their agreement. That freedom is indeed a constitutionally protected right. . . .[I]t is not the province of a court to second guess the wisdom of their bargain, or to relieve either party from the burden of that bargain by rewriting the document. Rather, it is a court's duty to enforce the contract as plainly written.") (citations omitted).  As noted above, the plain language of this policy does not require Rockhill to provide coverage for costs associated with replacing undamaged property. So  Plaintiff's claim for matching costs must be rejected.  *See CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 219CV442FTM29MRM, 2021 WL 877560, at *7 (M.D. Fla. Mar. 9, 2021) (holding that plaintiff was not entitled to the replacement of undamaged roof sections where the policy was limited to "direct loss"); *Woods Apartments, LLC v. U.S. Fire Ins. Co.*, No. 3:11-CV-00041-H, 2013 WL 3929706, at *1 (W.D. Ky. July 29, 2013) ("Plaintiffs are only entitled to repair or replace those portions of the Property that Hurricane Ike damaged.").

Finally, Plaintiff's argument that public policy commands a finding that the policy covers matching costs is unpersuasive, for this invites the Court to "do violence to the policy's plain terms." *Ocean View Towers Ass'n, Inc.*, 2011 WL 6754063 at *10; *Great Am. Ins. Co. of New York*, 2015 WL 6773870 at *3 ("To hold otherwise would do violence to either the parties' mutual duties of good faith or the plain terms of the policy.")  We also note that Plaintiff' passing remark regarding the appraisal panel's

13

alleged failure to address costs attributable to compliance with ordinances or laws, [D.E. 59, p. 9 n.5], is likewise in direct conflict with the policy's plain language and meaning and, as such, does not persuade this Court.  [D.E. 10-1, p. 32] (excluding from coverage "[t]he increased costs incurred to comply with an ordinance or law[.]"). Accordingly, the Court finds that Defendant is not required to pay for matching expenses of undamaged property under the terms of the policy.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's partial motion for summary judgment on the issue of matching be **DENIED**, and that Defendant's cross motion for summary judgment be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**SUBMITTED** in Chambers at Miami, Florida, this 24th day of June, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge