United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Magnolia Lane Condominium Association, Inc., Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 19-24202-Civ-Scola |
| Rockhill Insurance Company, Defendant. | ) ) ) | |

### Order

This matter is before the Court upon Plaintiff Magnolia Lane Condominium Association, Inc.'s objections (Obj., ECF No. 73) to the report and recommendations issued by Magistrate Judge Edwin G. Torres (R&R, ECF No. 72) concerning the parties' cross motions for partial summary judgment.

For the reasons set forth below, the Court **overrules** the Plaintiff's objections (**ECF No. 73**) and **adopts** Judge Torres's report (**ECF No. 72**) to the extent it does not conflict with this order. The Plaintiff's motion for partial summary judgment (**ECF No. 59**) is **denied** and the Defendant's motion (**ECF No. 60**) is **granted**.

### 1. Background

This dispute concerns the proper interpretation of a policy that the Plaintiff holds with Defendant Rockhill Insurance Company ("Rockhill"). The Plaintiff owns condominium buildings whose roofs, windows, and other parts were physically damaged by Hurricane Irma in 2017. The Plaintiff sought $2,238,972.47 to cover the repairs. Rockhill only agreed to pay $73,342.62.

The Plaintiff says Rockhill's figure fails to account for the cost of maintaining the aesthetic uniformity of the affected structures post-repairs. Rockhill says the policy does not require it to cover "matching costs" because the policy only requires it to cover the repairs of damaged pieces. Matching costs include those associated with ensuring that the undamaged pieces visibly match the repaired ones.

The relevant portions of the policy follow:

> **A. Coverage**
> We will pay for direct physical loss or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
> . . . .

> **R. LOSS TO A PAIR, SET OR PANEL**
> In case of loss to a pair, set or panels, we may elect to:
>
> 1. Repair or replace any part to restore the pair, set or panels to its value before the loss;
> 2. Pay the difference between actual cash value of the property before and after the loss;
> 3. Pay in any loss involving part of a series of pieces or panels:
>
> > a) The reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible; or
> > b) The reasonable cost of providing an acceptable decorative effect or utilization as circumstances may warrant.
>
> However, we do not guarantee the availability of replacements, and we will not be liable, in the event of damage to or loss of a part, for the value, repair or replacement of the entire series of pieces or panels.
> . . . .
>
> **1. Coverage A – Coverage for Loss to the Undamaged Portion of the Building**
> With respect to the building that has sustained covered direct physical damage, we will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.
> . . . .
>
> **3. Coverage C – Increased Cost of Construction Coverage**
> a. With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
> (1) Repair or reconstruct damaged portions of that building; and/or
> (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required; when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

(Policy, ECF No. 10-1 at 18, 47, 59.)

    Both parties agree that the matter is resolved by contract interpretation and not by statute. (R&R 5.) Judge Torres agreed with Rockhill's reading and the Plaintiff filed timely objections to his report. However, those objections

essentially restate the same arguments the Plaintiff made in the briefing on the cross-motions for summary judgment.

### 2. Legal Standard

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 Fed. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones,* 863 F.2d 815, 822 (11th Cir.1989) (alterations omitted). The objections must also present "supporting legal authority." Local Mag. J. R. 4(b).

Once a district court receives "objections meeting the specificity requirement set out above," it must "make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 Fed. App'x at 783–84 (quoting *Heath,* 863 F.2d at 822) (alterations omitted). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 Fed. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009).

### 3. Analysis

In Florida, "insurance contracts are construed in accordance with the plain language of the polic[y] as bargained for by the parties." *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) (alteration in original). The Plaintiff argues that the policy provides for matching costs at three parts: (1) its section A ("Coverage"); (2) its section R ("Loss to a Pair, Set or Panel"); and (3) its endorsement for ordinance/law coverage. The Court disagrees.

***First,*** section A nowhere mentions matching costs. The Plaintiff argues that "matching" is "naturally included" in the definition of a loss "because the inability to spot-repair damage to match the undamaged components amounts to a financial detriment caused by an insured's property damage." (Obj. 5.) But that argument is flawed; it assumes what it sets out to prove. And in fact, the relevant definition is not that of a "loss." A plain reading of section A indicates that the relevant definition is that of a "Covered Cause of Loss," which nowhere

includes lack of aesthetic uniformity. (*E.g.*, ECF No. 10-1 at 20, 32.) The Plaintiff's argument as to section A fails.

***Second,*** the Plaintiff concedes that section R allows Rockhill three options when it comes to losses involving panels or sets. (Obj. 5 n.2.) Rockhill contends that it chose the option provided for at subsection 3(a). (Opp. 3, ECF No. 74.) Subsection 3(a) requires Rockhill to pay the "reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible[.]" (Policy 3.) That provision must be read in conjunction with the disclaimer that follows. It states that Rockhill does "not guarantee the availability of replacements, and [ ] will not be liable in the event of damage to or loss of a part, for the value, repair or replacement of the *entire series* of pieces or panels." (*Id.* (emphasis added).)

The Plaintiff reads this disclaimer as a condition precedent to Rockhill's responsibility for replacing an entire series in a panel or set. It says "the Defendant's liability for wholesale replacement is only limited in the event that a replacement is not available." (Obj. 8.) That reading is incorrect.

The plain language of the clause places no conditionality on Rockhill's responsibility for the entirety of a series (i.e. damaged and undamaged parts alike). The provision disclaims that responsibility outright. Under the plain language, Rockhill need not make any showing concerning a replacement's availability before refusing to repair or replace the undamaged portions of an entire series. As such, the Court agrees with Judge Torres that subsection 3(a) does not require Rockhill to cover matching costs for undamaged parts.

The Plaintiff also says that this disclaimer allows Rockhill discretion as to whether to cover matching costs such that the disclaimer renders the policy illusory. (Obj. 10.) Rockhill responds that the disclaimer leaves no room for discretion; it affirmatively disclaims any responsibility for an "entire series of pieces of panels," which would include undamaged pieces. (*See* ECF Nos. 60 at 6, 68 at 4.) The Court agrees. No discretion is invoked by the paragraph's plain terms. As such, the policy is not illusory by virtue of the disclaimer.

The alleged infirmity that the Plaintiff calls up is again the byproduct of the Plaintiff assuming what it sets out to prove: that matching costs are inherently provided for. Indicative of the Plaintiff's flawed interpretation of section R is its assertion that subsection 3 is entirely duplicative of subsections 1 and 2. (*See* ECF No. 64 at 9.) The Plaintiff says all the subsections provide for matching costs, but the provisions' text plainly indicates otherwise.

Each subsection refers to a particular scenario and none except subsection 3 mentions matching. The Plaintiff reads matching costs into subsections 1 and 2 by arguing that property value accounts for pre-repair aesthetic uniformity. Adopting the Plaintiff's reading, however, would belie the

intentionality behind limiting explicit mention of matching costs to subsection 3, and, as the Plaintiff has conceded, render null any differentiation among the subsections. Although "policy language [that] is susceptible to two reasonable interpretations" is ambiguous, *Fayad*, 899 So. 2d at 1086, the Court finds the Plaintiff's reading of subsections 1 and 2 is not reasonable. It is instead intentionally directed at reading an ambiguity into section 3's plain language where none exists. For these reasons, the Plaintiff's second argument fails.

***Third,*** the Plaintiff says Judge Torres incorrectly ruled on its argument concerning the ordinance/law coverage endorsement.[1] That provision applies where an ordinance or law "a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and b. Is in in force at the time of loss." (Policy 58.) In addition, the entirety of the *damage* must "result[] in enforcement of the ordinance or law." (*Id.* at §§ 2.a, 2.b.)

The Plaintiff first raised this argument in a footnote as part of the summary judgment briefing. It says: "The appraisal panel failed to address any ordinance and law considerations associated with the windows. Naturally, the new windows would have to be replaced pursuant to the current Florida Building Code, and if the building department will not allow repairs, all 20 windows on Building 7 would have to be replaced under the Ordinance and Law coverage." (ECF No. 59 at 9.)

In response, Rockhill says the Plaintiff "improperly conflates two different concepts—replacement of damaged windows when repair of the windows will not meet code, and replacement of undamaged windows (which Florida building code does not require)." (Opp. 6.) The Court agrees. A plain reading of the provision indicates that mismatches between damaged and undamaged windows resulting from repairs are *not* the type of damages contemplated by this endorsement. The endorsement contemplates sustained damage to a building—not repairs—that would cause a violation of an ordinance or law. (Policy 58 §§ 2.a, 2.b.) The Plaintiff has provided the Court with no basis to conclude that coverage under this clause should be triggered, nor has it even pointed the Court to the relevant Florida Building Code provisions.

Instead, the Plaintiff hangs its hat on Judge Torres' reference to *Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 19-80959-CIV, 2021 WL 8536459, at *3 (S.D. Fla. Dec. 22, 2021) (Singhal, J.). There, the parties contemplated matching costs and had the same wording in their ordinance/law endorsement. Judge Torres referenced the case as one involving

---

[1] Judge Torres cited to the exclusionary language concerning ordinances and laws at page 32 of the Policy. The Court bases its ruling on the ordinance/law coverage endorsement beginning at page 58 of the same.

matching costs, and the Plaintiff seems to take that reference as conclusive proof of matching costs being accounted for here. Not so. The *Empire* court did not explicitly hold that the identical ordinance/law endorsement provided a basis for matching costs—nor did Judge Torres. In fact, *Empire* cuts against the Plaintiff's position because the court there took issue with the parties' failure to identify the relevant law/ordinance that would trigger the identical endorsement, as the Plaintiff has also failed to do here. *See id.* at *5–*6. The Plaintiff's third argument fails.

### 4. Conclusion

Upon a de novo review of the matters raised in the Plaintiff's objections to Judge Torres' report, and a review of the report in full for clear error, the Court **overrules** the Plaintiff's objections (**ECF No. 73**) and **adopts** Judge Torres's report (**ECF No. 72**) to the extent it does not conflict with this order. The Plaintiff's motion for partial summary judgment (**ECF No. 59**) is **denied** and the Defendant's motion (**ECF No. 60**) is **granted**.

The parties previously advised the Court that the only matters pending adjudication in this action were: (1) whether the Rockhill policy requires matching; and (2) a determination of entitlement to and amount of statutory attorney's fees and costs. (ECF No. 57.) Having resolved the matching issue, the Court **directs** the clerk to **administratively close** this case. Any motions currently pending are **denied as moot**.

Any future motions concerning attorney's fees and costs in this matter are hereby **referred** to United States Magistrate Judge Edwin G. Torres to be heard and determined, consistent with 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of the Local Magistrate Judge Rules.

**Done and ordered** at Miami, Florida, on July 25, 2022.

_____
Robert N. Scola, Jr.
United States District Judge